# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: WATSON FENTANYL PATCH ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) <br> ------------------------------------------------------) <br> ) <br> STEVEN HAYES, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ACTAVIS, INC., f/k/a Watson ) <br> Pharmaceuticals, Inc., et al., ) <br> ) <br> Defendants. ) | Case No. 12 C 6296 <br><br> MDL No. 2372 <br><br><br><br><br><br><br><br> Case No. 13 C 3366 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This Court is presiding over coordinated pretrial proceedings in related product liability cases against Watson Pharmaceuticals, Inc. (now known as Actavis, Inc.) and various related entities, pursuant to an order by the Judicial Panel on Multidistrict Litigation entered under 28 U.S.C. § 1407. This decision concerns one of those cases, *Hayes v. Actavis, Inc.*

## Background

The overwhelming majority of the cases that compose the MDL proceeding were filed by a single law firm, Heygood, Orr & Pearson of Dallas, Texas. All of the cases brought by the Heygood firm have ended up with negotiated settlements. That includes the *Hayes* case, which is a wrongful death suit. The parties dispute whether the

settlement in the *Hayes* case requires court approval, and if so by what court. This boils down to a dispute over what state's law applies.

The deceased, Eric Hayes, was an Ohio resident who died in Ohio. The fentanyl patch that allegedly caused his death was prescribed, purchased, and applied in Ohio. The beneficiaries who are the named plaintiffs in this lawsuit are Ohio citizens and residents. The defendants are Delaware and Nevada corporations with their principal places of business in Utah (Watson Laboratories – Delaware), New Jersey (Watson Pharma), and California (Watson Laboratories – Nevada). It appears that the fentanyl patch that Hayes used was designed and manufactured in Utah (with, potentially, some design activity in California) and was distributed by Watson Pharma, whose principal place of business is in New Jersey. Watson Nevada holds the FDA approval for the patches. Plaintiffs' claim involves allegations of manufacturing and design defects.

The present case was brought by Steven Hayes, Lara Hayes, and "August LaPlante, as the guardian *ad litem* for Lilium Hayes, a minor." It was filed directly in this district, initially assigned at random to another judge, and then transferred to the undersigned judge as related to the pending MDL proceeding.

The present case is one of a handful of cases that originated in other districts but were directly filed here pursuant to an agreed-upon procedure, common in MDL product liability cases, that the Court approved. The Court's approval of direct filing of non-Illinois cases came about as the result of a request by the parties contained in a status report they filed on April 23, 2013. By that point, settlement negotiations involving nearly all of the cases brought by the Heygood firm were quite advanced or had been completed.

2

The April 23, 2013 status report included the following statement:

> There are a few claims (less than 5) where formal lawsuits had not yet been filed before a settlement was reached although, for various reasons, the settlement still requires court approval (i.e. the claims settled before the lawsuit was filed and transferred to the MDL but still need court approval of the proposed settlement). Since these cases are unfiled, counsel for the parties to the settlements have been discussing where these court approvals should take place. These discussions are still ongoing. However, the parties have agreed that, in certain cases, assuming such is acceptable with this Court, a new lawsuit will be filed in the Northern District of Illinois and, upon transfer to Judge Kennelly, motions for approval of those settlements and corresponding papers will be filed with this Court. For any of the unfiled cases that may fall in this category, the parties anticipate having such unfiled cases filed in the Northern District of Illinois within the next 2 weeks.

Joint Status Report (dkt. no. 28) at 3. Following receipt of the status report, the Court entered an order permitting the parties to file the handful of settled but not-yet-filed cases in this district. *See* Order of Apr. 23, 2013 (dkt. no. 29).

The plaintiffs in the present case thereafter filed the case in this district and then moved for approval of the settlement. Defendants objected, saying that Ohio law applies and that Ohio law requires approval of the settlement by an Ohio probate court. Plaintiffs contend that California supplies the applicable law and that California law permits the court in which a wrongful death suit is filed to approve a settlement. Plaintiffs argue alternatively that even if Ohio law applies, it permits this Court to approve the settlement in the present case.[1]

---

[1] The Court rejects plaintiffs' argument that defendants forfeited the argument for Ohio court approval by failing to object at the appropriate time. This case was one of many listed in a document entitled "Settlement Agreement" that set forth terms relating to all or most of the settled cases brought by the Heygood firm, including this one. *See* Defs.' *In Camera* Exs. to Opp. to Pls.' Mot., Ex. 1. That agreement provided a date by which defendants would advise plaintiffs' counsel which settlements they believed required court approval and what specific court approval defendants believed necessary. *See id.* ¶ 9. The record reflects that defendants provided the necessary notification to plaintiffs' counsel by the stated deadline. *See* Defs.' Opp. to Pls.' Mot., Ex. A (Green Affid.) ¶ 5 (quoting Dec. 21, 2012 letter to plaintiffs' counsel).

3

## Discussion

The parties agree that the settlement requires court approval and that state law governs the question of approval. Some states require court approval of settlements of wrongful death cases; some require approval of settlements of cases involving minors, and some require both. Ohio, in particular, requires approval by an Ohio probate court.

Both parties begin their analysis of the choice of law issue with Illinois law, which both sides contend supplies the applicable choice of law rules. That would, in fact, be the usual rule: a federal district court sitting in diversity applies the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). But unlike the usual case filed in this district, the present case has no connection with Illinois other than the fortuity that the JPML authorized an MDL proceeding to take place here, supervised by the undersigned judge. Illinois is essentially an artificial forum created for purposes of convenience and efficiency. That is doubly true for the present case, which was filed here only by virtue of a court-approved direct-filing procedure whose sole purpose was to maximize convenience and save the parties' and judicial resources.

Given these circumstances, it would not make a great deal of sense to apply Illinois law in this case, or even Illinois' choice of law rules. Indeed, the prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated. *See, e.g., In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2100, No. 3:09–md–02100–DRH–PMF, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011); *In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig.*, MDL No. 1785, 2007 WL 3046682, at *3

4

(D.S.C. Oct. 11, 2007) (noting that "it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure—a procedure that provides benefits to all parties and preserves judicial resources"). The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated. *Cf. In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law . . ., [an MDL] transferee court must apply the state law that would have applied to the cases had they not been transferred for consolidation.").

This, however, leads not to an answer but to another question: where did this case originate? Judge Herndon concluded in the *In re Yasmin* case, which like the present one involved product liability claims, that it was appropriate to treat a foreign direct-filed case as if it had been filed "in the state where the plaintiff purchased and was prescribed the subject [product]." *In re Yasmin*, 2011 WL 1375011, at *6. In the present case, that would indicate that Ohio law applies, as defendants contend.

Plaintiffs argue for the application of California law, pointing out that their complaint in the case relies on California's wrongful death statute. That argument is a non-starter. The Court is unaware of any choice of law principle, nor have plaintiffs identified one, that permits a plaintiff to choose the law that applies simply by picking it in his complaint. Plaintiffs do, however, have an alternative argument. They contend that the case could have been filed in California in the first place in view of the fact that one of the defendants has its principle place of business there (and perhaps for other reasons as well). Because plaintiffs evidently want California law to apply, the Court

5

thinks that it is fair to assume that had plaintiffs not been able to file the case directly in this district, they would have filed it in California and then sought transfer to this district.

Despite this, the Court concludes that Ohio law applies to the question under advisement. The Court reaches this conclusion by any of three independent routes. The first is the simplest of the three. The parties expressly agreed, in their settlement agreement, that the agreement "shall be governed by the laws of Ohio." Pls.' *In Camera* Exs. for Settlement Approval Hrg., Ex. 7 ¶ 22. Virtually every state enforces contractual choice of law agreements, *see, e.g., Indem. Ins. Co. of N. Am. v. Hanjin Shipping Co.*, 348 F.3d 628, 633-34 (7th Cir. 2004),[2] and plaintiffs offer no reason why the Court should not enforce this one. The settlement agreement elsewhere cites and quotes a California statute regarding the scope of general releases, *see id.* ¶ 5, but this cannot fairly be construed as evincing any sort of an intention to apply California law. Indeed, this same provision appears to be in most, if not all, of the settlement agreements that have been tendered to this Court in connection with settlement approval requests. It is reasonable to infer that it was included for "belt-and-suspenders" purposes because one of the defendants has its principal place of business in California.

The second route that leads to application of Ohio law is the approach that Judge Herndon took in the *In re Yasmin* case, namely, that a direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product. That is how the place of filing is determined in

---

[2] This includes California, at least when the contractual choice of law has a substantial relationship to the parties, which it does here, and there is no public policy reason not to enforce it, which there is not. *See, e.g., Nedlloyd Lines B.V. v. Superior Court of San Mateo Cty.*, 3 Cal. 4th 459, 464-68, 834 P.2d 1148 (1992).

6

overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented. In this case, the deceased prescribed and used the fentanyl patch in Ohio, his state of residence.

The third route to Ohio law is a bit more circuitous, but it starts with the premise that the case "originates" in California because plaintiffs' complaint suggests that they would have filed it there. (The Court assumes, but does not decide, that venue would have been appropriate in California.) Plaintiffs seem to assume that if they filed the case in California, California law would govern everything at issue in the case, including settlement approval. But that is not the law. A determination that the case originated in California would result, initially, in application of California's choice of law rules. Those rules, in turn, would determine what state's law applies.

Neither side has offered any arguments regarding the application of California choice of law rules, effectively leaving the Court to its own devices. It does not appear to the Court, however, that a California court would apply California law to the question under advisement. California law requires a separate choice of law inquiry to be made with respect to each issue in the case. *See, e.g., Washington Mut. Bank, FA v. Superior Court of Orange Cty.*, 24 Cal. 3d 906, 920 15 P.3d 1071 (2001). When there is a conflict among the various states' laws at issue – as is the case here – a California court determines which state's interests would be more impaired it its law were not applied. *Id.* That inquiry points to the application of Ohio law to the question under advisement. The evident purpose of the Ohio statute requiring probate court approval of settlements of wrongful death matters is to protect estate beneficiaries. Both the decedent in this case and the beneficiaries are Ohio residents. The interests of Ohio,

where the beneficiaries live, would suffer greater impairment were the Court to apply California law (which does not require probate court approval) than would the interests of California, where none of the beneficiaries live, were the Court to apply Ohio law.

For each of these separately-applicable reasons, the Court concludes that Ohio law governs the question of approval of the settlement. The applicable Ohio statute expressly requires probate court approval, *see* Ohio Rev. Code §§ 2125.02 – 2125.03; it does not permit approval by whatever court (federal or state) that happens to be presiding over a wrongful death case. The single case cited by plaintiffs does not hold otherwise. Rather, its holding is that an Ohio court would recognize the effectiveness of a release executed prior to suit by a non-Ohio resident. *See McCluskey v. Rob San Servs., Inc.*, 443 F. Supp. 65, 70-71 (S.D. Ohio 1977). The release was effective under the law of the state where it was executed. No similar question is presented here, because the issue is whether the settlement, absent Ohio probate court approval, is effective as a matter of Ohio law as to residents of Ohio. It is not.

## Conclusion

For the reasons stated above, the Court concludes that the settlement of the present case requires approval by an Ohio probate court. The Court therefore denies without prejudice plaintiffs' motion requesting an order approving the settlement [# 5].

                                                                    MATTHEW F. KENNELLY
                                                                      United States District Judge

Date: August 27, 2013